**Jackie L. HAYS, Jr.,
Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, Secretary of
Health and Human Services,
Defendant–Appellee.**

No. 89–1593.

United States Court of Appeals,
Fourth Circuit.

Argued May 11, 1990.

Decided July 11, 1990.

Deborah Kay Garton, Hensley, Muth, Garton and Hayes, Bluefield, W.Va., (William A. Kolibash, U.S. Atty., Betsy C. Steinfeld, Asst. U.S. Atty., Wheeling, W.Va., on brief) for plaintiff-appellant.

Robert S. Drum, Asst. Regional Counsel, (Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Chief, Social Security Litigation Div., on brief), Office of the General Counsel, Dept. of Health and Human Services, Philadelphia, Pa., for defendant-appellee.

Before ERVIN, Chief Judge, and RUSSELL and SPROUSE, Circuit Judges.

ERVIN, Chief Judge:

Jackie L. Hays, Jr. ("Hays") appeals from the decision of the district court affirming the determination of the Secretary of Health and Human Services (the "Secretary") that Hays was not eligible for disability insurance benefits because he had the residual functional capacity for a full range of "light work." Because the denial of benefits in this case is supported by substantial evidence, the judgment below is hereby affirmed.

I.

Hays was 33 years old at the time of his administrative hearing, has a general equivalency diploma, and had been employed for approximately three years as an electronic assembly technician, which involved skilled labor and "heavy" to "very heavy" work.[1]

Hays applied for disability insurance benefits on November 21, 1986, alleging that he has been disabled since January 11, 1986, due to a back injury sustained at work.[2] The Department of Health and Human Services denied Hays' application for benefits originally and upon reconsideration. Thereafter, an administrative law judge ("ALJ") conducted a formal hearing and determined that Hays was not disabled because he had a residual functional capacity for a full range of "light work." The Appeals Council subsequently denied Hays' request for review of the ALJ's decision, which then became the final decision of the Secretary. Reviewing the ALJ's decision upon referral by the district court, a federal magistrate concluded that the denial of benefits was supported by substantial evidence, and recommended that the Secretary's determination be affirmed. On cross-motions for summary judgment, the lower court adopted the magistrate's proposed findings of fact and recommendation, and entered final judgment in favor of the Secretary.

On appeal, Hays argues that the Secretary's decision is not supported by substantial evidence because the ALJ improperly evaluated Hays' physical impairment and accompanying pain under the regulations. More specifically, Hays contends that his back injury constitutes a musculoskeletal

---

1. The Social Security Administration classifies jobs according to the physical exertion required to perform them. "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Moreover, an individual is able to perform "light work" only if he or she is able to do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting. "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying small, lightweight objects. Although "sedentary work" normally involves sitting, some walking and standing occasionally may be required as

part of the job. An individual who can perform work at a given level of exertion is deemed capable of performing all jobs classified at or below that level. *See* 20 C.F.R. § 404.1567 (1989). Jobs are also classified according to the level of skill required, including unskilled, semi-skilled and skilled work. *Id.* § 404.1568. Moreover, any person under age 50, such as Hays, is deemed to be a "younger individual." *Id.* § 404.1563.

2. Apparently, Hays was repairing, replacing or working on the structural frames of a ground-based satellite dish during the Super Bowl, when one of the frames collapsed and fell on him. Because of this accident, Hays has been receiving workman's compensation benefits since January of 1986. As a former serviceman, Hays also is entitled to free medical care at health facilities operated by the Veterans Administration ("VA"). In 1978, the VA gave Hays a fifty percent service disability rating for knee and ankle problems and a seizure disorder.

impairment as that medical condition is defined in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 1, § 1.05(C) (1989). In addition, Hays insists that his disability claim was improperly evaluated under the medical-vocational guidelines contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2 (1989), that the ALJ erred in failing to use vocational expert testimony, and that the Secretary's conclusion that he could perform "light work" is not supported by substantial evidence.

## II.

Judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. §§ 301 *et seq.* (the "Act"), is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...."); *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Elaborating on the foregoing definition, this court has defined "supported by substantial evidence" as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966), *quoted in Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984), and *Blalock v. Richardson,* 483 F.2d 773, 776 (4th Cir.1972). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence. *See Laws v. Celebrezze,* 368 F.2d at 642; *Snyder v. Ribicoff,* 307 F.2d 518, 529 (4th Cir.1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano,* 599 F.2d 597, 599 (4th Cir.1979) ("This Court does not find facts or try the case *de novo* when reviewing disability determinations."); *Seacrist v. Weinberger,* 538 F.2d 1054, 1056–57 (4th Cir.1976) ("We note that it is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."); *Blalock v. Richardson,* 483 F.2d at 775 ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.' ").

## III.

The principal question on appeal is whether Hays' back injury satisfies the definition of a musculoskeletal impairment contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 1 (1989) (the "Listings"). If a claimant's physical impairment satisfies any of the medical conditions set forth in the Listings, the individual is considered to be disabled under the Act. *See* 20 C.F.R. § 404.1520(d). Section 1.05(C) of the Listings provides as follows:

> 1.05 *Disorders of the spine:*
>
> \* \* \* \* \* \*
>
> C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus [sic], spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>
> 1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

 In our view, Hays' condition does not satisfy the express requirements of section 1.05(C). First, his doctors have recommended that he submit to surgery to correct his back problems and relieve his pain. He has refused to do so. Hays claims that he doesn't want the surgery because it would have to be performed at a VA hospital and he has had bad experiences at such facilities. The Secretary insists that Hays has refused the surgery because he doesn't want to work, he fears losing his workman's compensation benefits, and he desires to remain eligible for social security disability benefits. In the terminology of section 1.05(C), the Secretary argues that, even if Hays does have a vertebrogenic disorder, it has continued for more than three months and is expected to last twelve months solely because Hays has refused remedial treatment, most particularly surgery. Essentially, the Secretary believes that but for Hays' own recalcitrance he would not be medically disabled. There is considerable merit to the Secretary's contentions.

Second, there is little medical evidence to suggest that Hays suffers from any type of "vertebrogenic disorder."[3] Hays has been diagnosed as having chronic lumbar radiculopathy,[4] a bulging of an intervertebral disc,[5] and mild sciatica.[6] However, none of Hays' attending physicians have found any evidence, either through examination or testing, of a herniated nucleus pulposus,[7] spinal stenosis,[8] prolonged nerve root compression, or problems with his motor, sensory, and reflex systems. Other than confirming the slight bulging of an intervertebral disc, his computerized axial tomograph scans, lumbosacral magnetic resonance scan, and myelogram were all normal. Hays also had a normal gait, and his straight-leg raising and heel-and-toe walking capabilities were largely unimpaired.

 We have examined the administrative record in this case, looking for evidence of a spinal disorder sufficient to satisfy the requirements of section 1.05(C). The evidence indicates only that Hays had a small bulge in one of his discs, that he probably was experiencing some amount of pain, that his pain was not alleviated by noninvasive treatment or physical therapy, and that he refused to undergo corrective back surgery. We agree with the Secretary that this evidence is insufficient to establish a disability under the Listings.

Elaborating upon the specific requirements of Section 1.05(C), Section 1.00(B) of Appendix 1 states:

There must be a detailed description of the orthopedic and neurologic examination findings. The findings should include a description of gait, limitation of movement of the spine given quantitatively in degrees from the vertical position, motor and sensory abnormalities, muscle spasm, and deep tendon reflexes. Observations of the individual during the examination should be reported; e.g., how he or she gets on and off the examining table. Inability to walk on heels or toes, to squat, or to arise from a squatting position, where appropriate, may be

---

3. "Vertebrogenic disorder" largely refers to a category or class of disorders relating to the vertebra or the spinal canal.

4. Radiculopathy is a disease of the nerve roots, and lumbar pertains to the loins.

5. Some of the doctors described the bulge as being "minimal" while others described it as being "small to moderate." Moreover, some of them also noticed accompanying intermittent nerve root compression while others did not. Nerve root compression is a form of radiculopathy.

6. Sciatica is pain, often accompanied by tingling or tenderness, along the sciatic nerve, which traverses the hips and legs.

7. A hernia is a protrusion of a loop or knuckle of an organ or tissue through an abnormal opening. A herniated nucleus pulposus is a rupture or prolapse of the nucleus pulposus into the spinal canal. The nucleus pulposus is a semifluid mass of fine white and elastic fibers that forms the central portion of an intervertebral disc.

8. Spinal stenosis is a narrowing of the spinal canal.

considered evidence of significant motor loss.

\* \* \* \* \* \*

These physical examination findings must be determined on the basis of objective observations during the examination and not simply a report of the individual's allegation, e.g., he says his leg is weak, numb, etc. Alternative testing methods should be used to verify the objectivity of the abnormal findings, e.g., a seated straight-leg raising test in addition to a supine straight-leg raising test. Since abnormal findings may be intermittent, their continuous presence over a period of time must be established by a record of ongoing treatment.

All of the factors in this case that are mentioned in the foregoing excerpt from section 1.00(B) and the controlling language of section 1.05(C) suggest that Hays' impairment does not rise to the level of a disabling impairment under the Listings.

### IV.

Because Hays' back injury did not constitute one of the medical impairments found in the Listings, his disability claim was evaluated by the ALJ under 20 C.F.R. §§ 404.1520(e) &amp; (f). Under these provisions, an individual is considered disabled if he has an impairment which prevents him from doing prior relevant work, and he does not have the residual functional capacity, the age, education or past work experience to perform other available work. *See also* 20 C.F.R. §§ 404.1545—404.1565 (1980) (addressing each of these factors in detail).

In this case, the ALJ found that, while Hays' back injury precluded him from engaging in past relevant work activity, he could perform "light work" as defined in 20 C.F.R. § 404.1567 (1989). Hays argues that the ALJ, in making this determination, erroneously applied the medical-vocational guidelines contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, §§ 202.00–202.22 (1989) (the "Grids"), and failed to seek and consider the opinions of a vocational expert. Alternatively, Hays asserts that the ALJ's conclusion regarding his ability to perform "light work" is not supported by substantial evidence. There is little merit to these arguments.

First, the ALJ correctly applied section 202.21 of the Grids to Hays because he is a younger individual, has a high school diploma, and is a skilled worker with non-transferable skills. That section clearly indicates that an individual such as Hays who is capable of working in the national economy is not disabled under the Act. Second, the application of the Grids does not require the use and consideration of vocational expert testimony in cases such as this one where the claimant suffers only from exertional impairments. *See Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984); *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir.1983). Third, the ALJ's determination that Hays could perform "light work" is supported by substantial evidence in the record. For example, Dr. John McAllister, a neurological surgeon, examined Hays on March 13, 1986, and concluded: "He has pain with flexion and extension of his back, but not in a remarkable fashion." *See* Transcript ("Tr.") at 94. Dr. McAllister examined Hays again on June 12, 1986, and noted in his medical records: "I think he needs to perhaps get back in the mainstream of life and probably do some kind of work." Tr. at 96. Dr. Benjamin Rezba, an orthopedic specialist, examined Hays on March 10, 1987, and stated: "I keep advising him [Hays] he ought to go ahead with having the surgery done at the VA Center so that he can get back on his feet and get back to work again. I am not sure he really understands or wants to do anything more." Tr. at 108. Moreover, these opinions must be considered in light of the available medical findings, discussed above, which do not support Hays' disability claim. In light of the evidence in the administrative record, it would be difficult to say that the Secretary's decision is unsupported by substantial evidence.

### V.

Based on the foregoing reasons, we conclude that the Secretary's decision is sup-

ported by substantial evidence in the record. Accordingly, the district court's judgment is hereby

AFFIRMED.