Earl H. POTEAT, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health
and Human Services, Defendant.

No. 6:93CV00445.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Jan. 20, 1995.

V. Edward Jennings, Jr., Winston–Salem, NC, for plaintiff.

Ben H. White, Jr., Asst. U.S. Atty., Greensboro, NC, DHHS Regional Attorney, Atlanta, GA, for defendant.

## JUDGMENT

TILLEY, District Judge.

On September 26, 1994, in accordance with 28 U.S.C. § 636(b), the Recommendation of the United States Magistrate Judge was filed and served on the parties in this action and a copy was given to the court.

Within the time limitation set forth in the statute, counsel for the Plaintiff objected to the Recommendation.

The court has appropriately reviewed the portions of the Magistrate Judge's report to which objection was made and has made a de novo determination which is in accord with the Magistrate Judge's report. The court therefore adopts the Magistrate Judge's Recommendation.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the plaintiff's motion for summary judgment be **DENIED,** that the Secretary's motion for summary judgment be **GRANTED,** that the Secretary's decision be **AFFIRMED,** and that this action be dismissed.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

SHARP, United States Magistrate Judge.

Plaintiff Earl H. Poteat seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Secretary's final decision denying his claim for disability insurance benefits. The Secretary's denial decision became final on July 2, 1993, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action the parties have filed cross-motions for summary judgment, and the administrative record has been certified to the court for review.

#### The Claimant

Plaintiff Earl H. Poteat was born on March 1, 1939. He was 34 years old in May 5, 1973, the alleged onset date of his disability. Until May 1973, Plaintiff, who has an eighth-grade education, worked as a service station attendant. Plaintiff was last eligible for disability insurance benefits on June 30, 1973, when his insured status expired.

#### The Administrative Proceedings

On April 23, 1974, Plaintiff filed for disability insurance benefits claiming disability since May 6, 1973. That application was denied at the initial and reconsideration levels and Plaintiff did not pursue it further. Plaintiff filed again on January 6, 1983 claiming disability since May 5, 1973. Again, the application was denied and not pursued. A third application was filed on May 9, 1984. This application was pursued through the hearing stage where the ALJ denied benefits. On May 26, 1988, Plaintiff asked that his claim be reviewed in light of the *Hyatt* class action. The Secretary reopened the application and reaffirmed the earlier denial. On April 2, 1991, a hearing was held before the ALJ who issued a decision denying benefits. The Appeals Council granted review of that decision and remanded the case to the ALJ for another hearing on August 5, 1992. At the August 5 hearing, the ALJ heard testimony from the claimant and Dr. James Bruce, a medical expert. The parties agreed to the submission of interrogatories to a vo-

cational expert, rather than convening a supplemental hearing for the purpose of interrogating such an expert. After the Plaintiff submitted his interrogatories, the ALJ, citing grounds of irrelevance, refused to pose the Plaintiff's interrogatories to the vocational expert. The ALJ made the following findings relevant to this review:

1. Plaintiff met the disability insured status through June 30, 1973, but not thereafter;

2. Plaintiff suffered from severe impairments including chronic obstructive pulmonary disease, asthma, and allergic bronchitis, but did not have a listed impairment or a combination of impairments equal to a listed impairment in 20 C.F.R. § 404, Appendix 1, Subpart P;

3. Plaintiff's testimony about subjective symptoms was not credible;

4. Plaintiff retained the residual functional capacity to perform light work provided that there was no exposure to significant levels of airborne irritants or temperature or humidity extremes;

5. Plaintiff was unable to perform his past relevant work as a service station attendant;

6. Plaintiff's nonexertional limitations restricted the range of light work that he could perform, but there were significant numbers of jobs in the national economy he could perform; and

7. Plaintiff was not disabled for purposes of the Social Security Act at any time prior to June 30, 1973, when his insured status expired.

## The Scope of Review

The scope of judicial review by this court of the Secretary's decision denying benefits is limited. *Frady v. Harris,* 646 F.2d 143, 144 (4th Cir.1981). The court must review the entire record to determine whether the Secretary has applied the correct legal standards and whether the Secretary's findings are supported by substantial evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). Where this is so, the Secretary's findings are conclusive. The court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo. Id.* "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citations omitted), or "evidence which ... consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance ..." *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984) (citations omitted).

## Summary of the Evidence

In the months before June 30, 1973, Plaintiff was hospitalized twice. He was in the hospital from February 9 through February 14, 1973 for bronchitis, coughing and chest pains. (Tr. 200.) At his discharge Plaintiff was diagnosed with viral pneumonia, coronary artery disease, and congestive heart failure. (*Id.*) Plaintiff was treated by Dr. Vernard W. Bond, Jr., who is now deceased. Plaintiff returned to the hospital from May 6 through May 19, 1973, complaining of a fever and coughing. (Tr. p. 211.) Dr. Bond's diagnosis at discharge was pneumonitis and congestive heart failure. (*Id.*)

In connection with an earlier disability application, Dr. Bond, a treating physician, performed a physical capacities evaluation concerning the Plaintiff. According to Dr. Bond, out of an eight-hour day, Plaintiff could stand or walk one to three hours, sit from five to eight hours, and lift a maximum of twenty pounds. (Tr. 240.) Dr. Bond identified no other functional limitations on the Plaintiff's ability to do work.

Dr. Bruce, the medical expert who testified at the hearing, reviewed the medical records regarding the Plaintiff, and concluded that Plaintiff suffered two episodes of acute pneumonia complicated by congestive heart failure in February and May 1973. (Tr. 94.) Dr. Bruce stated that congestive heart failure can accompany pneumonia, but it ordinarily resolves after the pneumonia has cleared. (*Id.*) Dr. Bruce stated that Plaintiff's impairments after the second 1973 hospitalization were multiple allergies and chronic asthmatic bronchitis. (Tr. 95.)

These conditions left Plaintiff with a moderately severe pulmonary insufficiency. (*Id.*) Dr. Bruce noted that there was no indication of sinus problems at any time before 1974. He opined that as of June 30, 1973, Plaintiff maintained the capacity for light work, with avoidance of dust and fumes.

Dr. K. Frank McCain began treating Plaintiff in July 1973. At that time, Dr. McCain noted that Plaintiff had been suffering from asthma and bronchitis for about two years. (Tr. 198.) Testing in 1973 revealed allergies to ragweed and grass. (*Id.*) Dr. McCain recommended an environmental control program to alleviate the breathing problems. (*Id.*) Dr. McCain started treating Plaintiff for sinus problems in 1974. (Tr. 199.) In 1975, Dr. McCain said that Plaintiff's allergies limited his work to places where there was no dust, pollen, or mold antigens, but that, actually, he was deserving of disability. (Tr. 244.)

■ The medical records show that Plaintiff breathing problems persisted despite sinus surgery and other measures at least until the time of his last hearing before the Secretary. However, because Plaintiff's disability insured status expired on June 30, 1973, only a condition that existed before that date is relevant to whether Plaintiff is entitled to disability insurance benefits. *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.1979).

Plaintiff testified at both hearings about the effects of his breathing disorders. He complained of chest pains (Tr. 81), inability to sleep through the night (Tr. 85), and shortness of breath (Tr. 86). Plaintiff stated that he has been unable to lift anything since 1973 and mostly stays at home to be close to his medicine. (*Id.*) Plaintiff has taken Digitalis and Nitrostat for chest pain since 1973. (Tr. 84.)

*Discussion*

■ Plaintiff contends that the ALJ did not properly consider the testimony of Dr. McCain, a treating physician. The Secretary gives a treating doctor's opinion on the nature and severity of impairments controlling weight when it is supported by medically acceptable techniques and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). Dr. McCain has stated that in his opinion Plaintiff's breathing difficulties have left him disabled since early 1973. (Tr. 306.)

On review, the court finds that the Secretary had sound bases for assigning less than controlling weight to Dr. McCain's opinion. First, Dr. McCain did not begin treating Plaintiff until after his disability insurance status expired, and he expressed no clear opinion on Plaintiff's disability until long after 1973. Second, Dr. McCain's opinion is premised heavily upon Plaintiff's chronic sinusitis condition (*see* Tr. 306), a condition that the Secretary found, with substantial evidentiary support, did not develop until 1974. And third, other physicians, even a treating physician, have stated opinions or expressed evaluations that Plaintiff retained an ability to perform light work after 1973, and Dr. McCain himself said in 1975 that Plaintiff could work in an environmentally controlled workplace.

Dr. Bond was the only treating physician who had contact with Plaintiff before his disability insured status expired. Taken as a whole, Dr. Bond's notes reflect a patient who had been hospitalized twice for pneumonia. However, each time the symptoms had substantially eased before discharge. (Tr. 200–223.) Evidence from Dr. Bond conflicts with Dr. McCain's opinion. As late as 1975 Dr. Bond found that Plaintiff had the capacity to work. (Tr. 240.) Further, Dr. McCain himself stated in 1975 that Plaintiff's allergies required him "to *work* in an environment where there is absolutely no dust, pollen or mold allergens." (Tr. 244, emphasis added.) Plaintiff's ability to perform some kind of work is implicit in that statement. The court finds that the ALJ properly evaluated the evidence from the physicians who have treated or examined the Plaintiff.

■ Plaintiff also contends that the ALJ did not follow the instructions from the Appeals Council following remand. The court finds, however, that the record shows the ALJ did follow the instructions of the Appeals Council. Upon remand, the ALJ considered the opinions of both treating physicians, Dr. Bond and Dr. McCain. The ALJ

had a medical expert, Dr. Bruce, evaluate the nature and severity of Plaintiff's impairments. The ALJ considered Plaintiff's exertional and non-exertional limitations and their impact on his residual functional capacity. The ALJ's interrogatories to the vocational expert properly took into account Plaintiff's exertional and non-exertional limitations, as found by the ALJ. Both of Plaintiff's proposed interrogatories for the vocational expert, on the other hand, improperly sought opinions from the vocational expert on what Plaintiff's residual functional capacity was. The ALJ, not the vocational expert, has the responsibility for assessing a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1546. The role of a vocational expert is to determine whether jobs exist in the national economy for a claimant with a given residual functional capacity. *See* 20 C.F.R. § 404.1566.

■ Plaintiff also challenges the ALJ's finding that his pneumonia and congestive heart failure were not "severe" within the meaning of 20 C.F.R. § 404.1520(c). The discharge summaries from Plaintiff's 1973 hospital stays both note that his chest X-rays showed a normal heart. (Tr. 201, 212.) After his May discharge there is no evidence that Plaintiff sought medical treatment until after his disability insured status expired. Dr. Bruce, who reviewed Plaintiff's medical records, testified that the pneumonia had resolved and that medication improved Plaintiff's condition in 1973. (Tr. 95–97.) The court finds that substantial evidence supports the ALJ's finding that the pneumonia and congestive heart failure were transitory impairments that were resolved within 12 months and thus did not meet the duration test for disability.

■ Plaintiff also contends that the ALJ did not properly evaluate his complaints of pain and other subjective evidence of limitations. In the Fourth Circuit, Social Security ruling 90–1p governs the assessment of pain complaints.

In developing evidence of pain and other symptoms, it is essential to investigate all avenues presented that relate to subjective complaints, including the claimant's prior work record and information and observations by treating and examining physicians and third parties, regarding such matters as: 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. The claimant's daily activities.

Social Security Ruling 90–1p.

While Plaintiff's bronchitis and COPD could be conditions reasonably expected to produce pain or shortness of breath, the court finds that there is little credible evidence that these symptoms were disabling before June 30, 1973. After Plaintiff's release from the hospital in May 1973, he sought treatment only two other times in that year. (Tr. 307–308.) There were also other valid reasons for discounting Plaintiff's subjective reports of the limits on his abilities. The ALJ suspected (with justification by substantial evidence, the court finds on review) that Plaintiff submitted altered W–2 forms in an attempt to extend disability insurance coverage beyond June 30, 1973. (Tr. 18–19 and 136–37.) Testimony about the current limits on Plaintiff's daily activities is of limited value in determining how extensive those activities were nearly 20 years ago. The evaluation given by Dr. Bond (Tr. 240) is inconsistent with Plaintiff's recollection concerning his capacity for activity in 1973. The court finds that there was substantial evidence to support the discounting of Plaintiff's testimony.

■ It is the duty of the ALJ to resolve conflicts in the evidence. *Hays,* 907 F.2d at 1456. The court finds no legal error by the Secretary in the manner in which conflicting evidence was evaluated in this case. There is no lack of substantial evidence to support the Secretary's findings. Accordingly, the Secretary's decision should be sustained on judicial review.

### Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that an order be entered denying

Plaintiff's motion for summary judgment, granting the Secretary's motion for summary judgment, and affirming the Secretary's final decision, and that this action be dismissed.