47 F.3d 1165
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Clarence RIFFLE, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-2168.
 United States Court of Appeals, Fourth Circuit.
 Argued July 13, 1994.
Decided Feb. 28, 1995.
 
 ARGUED: James Timothy Meisel, Huntington, West VA, for Appellant. Lori Karimoto, Assistant Regional Counsel, Office of the General Counsel, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Philadelphia, PA, for Appellee. ON BRIEF: Charlotte Hardett, Chief Counsel, Region III, Dorothea J. Lundelius, Division Chief, Margaret J. Krecke, Assistant Regional Counsel,
 Office of the General Counsel, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Philadelphia, PA; Michael W. Carey, United States Attorney, Carol A. Casto, Assistant United States Attorney, Charleston, West VA, for Appellee.
 Before ERVIN, C.J., MURNAGHAN, C.J., and BUTZNER, Senior Circuit Judge.
 OPINION
 Unpublished opinions are no binding precedent in this circuit. See I.O.P. 36.5 and 36.6.
 PER CURIAM:
 
 
 1
 Clarence Riffle appeals from an order of the district court affirming the determination of the Secretary of Health and Human Services that Riffle was not eligible for disability insurance benefits or supplemental security income benefits. Because the Secretary's decision is supported by substantial evidence and the correct law was applied, we affirm.
 
 
 2
 * Riffle was born on August 24, 1953. He has a sixth grade education. He is married and has two children. Riffle worked as a welder from 1973 to 1976 and as a coal miner from 1976 to 1978. In 1978, while working as a coal miner, he suffered a fractured pelvis in an accident with a coal buggy. He returned to employment briefly in 1981 but stopped working soon afterward.
 
 
 3
 Riffle filed concurrent applications for disability insurance benefits and supplemental security income benefits on September 14, 1990, alleging that he had been disabled since September 30, 1981. The Department of Health and Human Services denied the applications initially and upon reconsideration. After this, an Administrative Law Judge (ALJ) conducted a formal hearing and determined that Riffle was not eligible for benefits. The Appeals Council denied Riffle's request for review, and the ALJ's decision became the final decision of the Secretary. A magistrate judge affirmed the Secretary's decision.
 
 
 4
 This court's review of the Secretary's decision is limited. We will uphold the Secretary's decision if it is supported by substantial evidence and if the correct law was applied. See 42 U.S.C. Sec. 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." 907 F.2d at 1456.
 
 
 5
 The ALJ tentatively followed the five-step procedure set out in 20 C.F.R. Secs. 404.1520(a) and 416.920(a). He found that Riffle had a severe impairment that prevented him from engaging in his previous work as a coal miner. Upon consideration of Riffle's exertional and nonexertional impairments, the ALJ further found that Riffle had the residual functional capacity to perform work at the light exertional level, with some limitations. He concluded that Riffle was not disabled within the meaning of the Social Security Act. 42 U.S.C. Secs. 423(d)(1)(A), 1382c(a)(3)(A).
 
 II
 
 6
 Riffle contends that the ALJ's decision is not supported by substantial evidence. Specifically, he protests that the ALJ failed to take into account his allegations of disabling pain and the opinions of his attending physicians, Dr. Whiteley and Dr. Craythorne, that he is disabled.
 
 
 7
 Dr. Daniel Whiteley has treated Riffle since 1981. Treatment notes between 1981 and 1984 indicate regular visits for low back pain. Physical examinations revealed no particular abnormality, straight leg raising and reflexes appeared to be intact, and neurological examinations were normal. In 1984, pain was reported on straight leg raising at 30 degrees on the right and 45 degrees on the left, and some hyperaesthesia in the right side of the lower back was noted. On one visit, Dr. Whiteley noted that Riffle was having trouble walking because of pain in his right leg.
 
 
 8
 No other visits were recorded until February 1989, when Dr. Whiteley noted a neurological deficit and spasm in the lower back. In September 1990 Dr. Whiteley reported functional limitations in bending and walking. On January 10, 1991, Dr. Whiteley examined Riffle and found that his condition remained largely unchanged. He noted that Riffle experienced pain during straight leg raising of 15 to 20 degrees. Several times in his notes Dr. Whiteley stated that Riffle's condition had remained substantially unchanged through his visits to the clinic. Dr. Whiteley also stated several times, both in his treatment notes and in subsequent letters, his belief that Riffle was disabled.
 
 
 9
 In August 1988, Dr. Colin M. Craythorne, an orthopedic surgeon, evaluated Riffle. Dr. Craythorne noted no difficulty in walking or straight leg raising, a full range of motion, and normal heel-toe testing. X-rays revealed a healed pelvic fracture and five lumbarized vertebrae with narrowing at the L4-L5 disc space. Dr. Craythorne believed there was degenerative disc disease at L4-L5, sacralization at L5-S1, and chronic low back pain with radiculitis. He did not recommend surgery. He estimated that Riffle could lift 50 pounds occasionally and 25 pounds frequently and would be restricted in forward flexion, bending, stooping, climbing, walking up inclines, and long distance driving.
 
 
 10
 Dr. Craythorne examined Riffle again in October 1991. He noted that Riffle was using a crutch to help him walk. Examination showed no difficulty in straight leg raising, no muscular atrophy, and slightly decreased sensation in the left toes. X-rays again showed a healed pelvis and increased narrowing at the L4-L5 disc space. Dr. Craythorne estimated that Riffle could lift 15 pounds occasionally and 10 pounds frequently, could sit, stand, or walk two hours per day, could not climb, crawl, or work at heights, and was limited in pushing and pulling.
 
 
 11
 On October 19, 1989, the West Virginia Rehabilitation Center conducted physical testing of Riffle's residual functional capacity. Riffle complained of low back pain on crawling, stooping, and squatting but stated he could sit all day without difficulty. He demonstrated the ability to lift or carry 35 pounds occasionally and 25 pounds frequently, lift 15 to 20 pounds overhead, and push or pull up to 180 pounds. A psychological report from May 1989 showed no emotional or behavioral disorders.
 
 
 12
 In October 1990, Dr. Rafael Gomez, a nonexamining physician who reviewed the medical evidence, estimated that Riffle could occasionally lift 50 pounds, frequently lift 25 pounds, and occasionally climb. Dr. Gilbert F. Norwood, also a nonexamining medical reviewer, concurred in Dr. Gomez's assessment.
 
 
 13
 In February 1991, Dr. James K. Egnor, a nonexamining physician, reviewed the file and estimated that Riffle could occasionally lift 50 pounds, frequently lift 25 pounds, and occasionally stoop or crouch.
 
 
 14
 Based on the medical evidence and hearing testimony, the ALJ found that Riffle retained the ability to perform light work which did not require work around unprotected heights or dangerous machinery, walking on uneven terrain, or jarring and vibration. Further, he must never climb stairs, stoop, or crouch. He must change posture every 45 minutes, and he often has slight trouble concentrating due to medication and sleep deprivation.
 
 
 15
 Despite finding that Riffle had severe degenerative disc disease with radiculitis, the ALJ determined, based on the testimony of a vocational expert, that there were jobs in the national and state economies which Riffle could perform. Accordingly, the ALJ found that Riffle was not disabled within the meaning of the Act and denied benefits.
 
 
 16
 In making his findings, the ALJ discounted Dr. Whiteley's repeated statements that Riffle was disabled, and he determined that the functional restrictions pertaining to sitting, standing, and walking found by Dr. Craythorne were, in light of the other evidence, patently erroneous. Further, the ALJ refused to give full weight to Riffle's allegations of disabling pain at the hearing, stating that no objective medical findings existed to support Riffle's testimony.
 
 
 17
 Riffle argues that the ALJ acted contrary to law in discounting the findings of Dr. Whiteley and Dr. Craythorne. In Mitchell v. Schweiker, 699 F.2d 185 (4th Cir.1983), we stated that the opinion of a claimant's treating physician is entitled to great weight, and may be disregarded only if there is persuasive contrary evidence. 699 F.2d at 187. In that case, we held that the ALJ had improperly discounted the opinions of the claimant's treating psychiatrists. The Secretary had failed to produce any persuasive evidence to contradict those opinions, and what little testimony did exist supported the claimant's allegations.
 
 
 18
 In this case, there was persuasive evidence to justify the ALJ's discounting the opinions of Riffle's treating physicians. Throughout treatment of Riffle, neither Dr. Whiteley nor Dr. Craythorne found significant neurological damage or muscular atrophy. Both doctors acknowledged that no objective findings existed to explain Riffle's allegations of pain. Neither physician recommended that Riffle undergo surgery.
 
 
 19
 Moreover, physical testing at the West Virginia Rehabilitation Center revealed that, while Riffle did have some functional limitations, he could stand or sit for several hours at a time and lift, push, or pull a substantial amount of weight.
 
 
 20
 We cannot say, after reviewing the record, that the ALJ erred in concluding that Dr. Craythorne's 1991 assessment of Riffle's functional capacity was inaccurate. Dr. Whiteley had consistently found no change in Riffle's condition throughout his treatment, and Dr. Craythorne did not explain his drastic departure from the limitations noted by the Rehabilitation Center and Drs. Gomez, Norwood, and Egnor.
 
 
 21
 Riffle asserts that the ALJ should have given full weight to his hearing testimony. He relies on Coffman v. Bowen, 829 F.2d 514 (4th Cir.1987), in which we stated that when a claimant's allegations of pain and a physician's finding of total disability are mutually supportive, the ALJ may find that the claimant is disabled. 829 F.2d at 518.
 
 
 22
 But the ALJ need not give full weight to the claimant's testimony in every case. The ALJ found that Riffle's testimony regarding his physical limitations was disproportionate with the findings of Dr. Craythorne and the functional capacity assessments. Moreover, he found that Riffle's claims had been inconsistent throughout the claims process. This court will not second-guess the ALJ's evaluation of a witness's credibility unless such evaluation is unsupported by the evidence or contrary to law. See Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985). That was not the case here. The Secretary's determination is supported by substantial evidence.
 
 III
 
 23
 Riffle appeals the magistrate judge's refusal to remand his case for consideration of three medical reports obtained after the Secretary's final decision.
 
 
 24
 Remand to the Secretary for consideration of new evidence is appropriate if there is good cause for the claimant's failure to present the evidence when his claim was before the Secretary and if the new evidence is relevant and material to the determination of disability and not merely cumulative. 42 U.S.C. Sec. 405(g). For evidence to be material, there must be a reasonable likelihood that the Secretary's decision would have been different had the new evidence been before her. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir.1985).
 
 
 25
 The examination notes of both Dr. Whiteley and Dr. William Dennison, which relate to evaluations conducted after the Secretary's decision, may be relevant in that they lend support to Riffle's prior allegations of disability. Neither report, however, satisfies the requirement of materiality. Dr. Whiteley's report is merely cumulative of his earlier reports; he makes no new clinical findings. Dr. Dennison's report is likewise cumulative of findings already contained in the record, such as Dr. Craythorne's 1991 examination report.
 
 
 26
 The psychological examination report by Carla King is not relevant because it does not relate to Riffle's condition before the Secretary's decision. Moreover, the report contains no findings that would support Riffle's claim of disability.
 
 
 27
 There is no reasonable likelihood that the ALJ's decision would have been different in the light of the new evidence proffered by Riffle. The evidence is not material and the magistrate judge properly refused to remand the case. See King v. Califano, 599 F.2d 597, 599 (4th Cir.1979); Skeens v. Sullivan, 737 F.Supp. 362, 365-66 (W.D.Va.1990).
 
 AFFIRMED