UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RONALD E. CALHOUN,
Plaintiff-Appellant,

v.

No. 94-2335

SHIRLEY S. CHATER, COMMISSIONER OF
SOCIAL SECURITY,
Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Mary S. Feinberg, Magistrate Judge.
(CA-93-560-5)

Submitted: November 14, 1995

Decided: August 6, 1996

Before WILKINSON, Chief Judge, and MURNAGHAN and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William J. Sadler, Princeton, West Virginia, for Appellant. Charlotte
Hardnett, Chief Counsel, Region III, William B. Reeser, Assistant
Regional Counsel, Office of General Counsel, DEPARTMENT OF
HEALTH AND HUMAN SERVICES, Philadelphia, Pennsylvania;
Rebecca Betts, United States Attorney, Stephen M. Horn, Assistant
United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ronald E. Calhoun appeals from an order of a magistrate judge affirming the denial of his claim for social security disability benefits. Because substantial evidence supports the final decision by the Secretary of Health and Human Services (Secretary) finding that Calhoun is not entitled to benefits, we affirm.

I

Calhoun was born on July 24, 1943. He completed the ninth grade and can read, write, and do basic arithmetic. Past relevant work experience includes work as an electrician in the coal mines from August 1974 until December 1987. In 1986, Calhoun began operating a pizza parlor and video rental/satellite installation business, which he ran full-time when he stopped working in the mines. He had several employees and kept his own books with the help of an accountant. He stopped working in this business on August 29, 1990, when he was injured in a car accident. He has not worked since that accident. Calhoun was last insured for disability purposes on December 31, 1991.

Following denial of his claim for disability insurance benefits, Calhoun received a hearing on his claim. The administrative law judge (ALJ) who conducted the hearing determined that Calhoun suffered from a variety of impairments, including alcoholism, thrombophlebitis, a history of peptic ulcer disease, and chronic obstructive pulmonary disease. Given Calhoun's medical problems, the ALJ determined that Calhoun could return neither to the coal mines nor to the business that he had owned and operated. But the ALJ determined, on the basis of the medical and vocational evidence and Calhoun's testimony at the hearing, that Calhoun retained the residual functional capacity to perform certain light work as well as a full range of sedentary work. For this reason, the ALJ determined that Calhoun was not under a disability and not entitled to benefits.

2

The Appeals Council upheld this decision, which became the final decision of the Secretary. Calhoun then appealed to the district court. A magistrate judge* determined that substantial evidence supported the denial of benefits. The court therefore granted the Secretary's summary judgment motion. This appeal followed.

II

Our review is limited to determining whether substantial evidence supports the Secretary's decision and whether the Secretary applied the correct law. 42 U.S.C. § 405(g) (1988); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence"consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, we do not weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary. Hays, 907 F.2d at 1456.

The record reveals that Calhoun suffers from a number of impairments. Calhoun, a smoker, has mild black lung disease. Besides the treatment he received for this condition, the record reflects that the only other medical treatment Calhoun received prior to his 1990 automobile accident was for an ankle fracture in 1975.

Calhoun was semicomatose upon his admission to the hospital following the accident, in which he suffered a concussion, fractured ribs, and lacerations. X-rays and CT scans taken during his ten-day stay were normal. Although he developed a pneumothorax during his hospital stay, the condition required no specific treatment. Dr. Klingensmith, who examined Calhoun for the pneumothorax, commented that Calhoun's condition was stable and that he did not believe the rib and lung injuries would cause permanent disability. Upon Calhoun's discharge, his physician stated that he was in good condition. Doctors gave him no medication to take after he left the hospital.

Following Calhoun's discharge, Dr. Silk remarked that Calhoun continued to do well, that his condition was stable, and that he had

_____

*The parties consented to the exercise of jurisdiction by the magistrate judge. 28 U.S.C. § 636(c) (1988).

3

no focal neurological deficits. A CT scan was normal, and X-rays revealed that Calhoun's ribs were healing. Dr. Silk prescribed a mild painkiller because Calhoun complained of headaches that were not severe, pain and tenderness in his right thigh and groin area, and pain in the lumbar area. Calhoun limped slightly when he walked. He had no weakness or numbness in his lower extremities.

A venogram performed in October 1990 revealed extensive deep venous thrombosis of the right calf, requiring Calhoun's hospitalization. Treatment included blood thinners and application of heat to the affected area. Swelling and pain decreased, and Calhoun was in good condition when he was discharged after one week.

There is no evidence that Calhoun received any medical treatment between his discharge in October 1990 and July 31, 1991, when he was again hospitalized for pneumonia and alcohol abuse. Calhoun had been drinking one-half gallon of liquor each day for the past three or four months. Examination revealed that he was suffering from anemia, dehydration, and confusion. His pneumonia resolved with treatment. Calhoun was in fair condition upon his discharge on August 12. Doctors prescribed a high-protein, high-calorie diet and instructed him to return gradually to his pre-admission activities.

In September 1991, recurring thrombophlebitis in his left leg necessitated another hospitalization. Blood thinners again eliminated his leg pain and tenderness. Calhoun was discharged in satisfactory condition. Tests performed the following year, after Calhoun had been off blood thinners for six months, revealed no decrease in blood flow in his leg.

Additional medical tests performed in 1992 disclosed that Calhoun had a history of ulcers. He also had an enlarged liver, which was probably attributable to earlier alcohol abuse. Calhoun was able to lift fifteen pounds frequently and thirty-five pounds occasionally, could stand and walk for four or five hours during an eight-hour work day, and could sit for six to seven hours (three to four hours without interruption) in an eight-hour work day. Calhoun had no difficulty using his arms or hands.

A vocational expert testified at the hearing before the ALJ that an individual fitting Calhoun's profile could perform a variety of jobs

4

existing in the national economy. Among the jobs were security gate guard, mail clerk, and small parts assembler.

## III

After reviewing the record, we conclude that substantial evidence supports the Secretary's decision. While Calhoun's several impairments preclude his return to his previous work, the evidence reveals that there are some jobs that he is capable of performing. It is noteworthy that none of the physicians or other professionals who examined Calhoun concluded that he was unable to work. Although Calhoun is an alcoholic, this condition never interfered with his ability to work in the past. There is nothing in the record to suggest that alcoholism would limit his present ability to work. The ALJ discredited Calhoun's claims of pain for several reasons, including Calhoun's not taking medication to relieve the alleged pain and his ability to engage in activities such as driving his truck and going to the movies. We will not disturb such a properly supported credibility determination. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.") Finally, we note the testimony of the vocational expert, who stated that there were jobs which an individual such as Calhoun could perform.

In light of all the evidence in the record, we conclude that substantial evidence supports the Secretary's decision denying benefits.

AFFIRMED

5