**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BETTY SLAYTON,
Plaintiff-Appellant,

v.

No. 98-1885

KENNETH S. APFEL, Commissioner of
Social Security,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca B. Smith, District Judge.
(CA-97-477-2)

Submitted: February 23, 1999

Decided: March 22, 1999

Before HAMILTON, LUTTIG, and MOTZ, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

Bruce Knight Billman, Fredericksburg, Virginia, for Appellant. James
A. Winn, Chief Counsel, Region III, Patricia M. Smith, Deputy Chief
Counsel, Allyson S. Jozwik, Assistant Regional Counsel, Office of
Chief Counsel, SOCIAL SECURITY ADMINISTRATION, Philadel-
phia, Pennsylvania; Helen F. Fahey, United States Attorney, Anita K.
Henry, Assistant United States Attorney, Richmond, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Betty Slayton appeals the district court's final order adopting the recommendation of a magistrate judge, granting summary judgment to the Commissioner, denying Slayton's motion for summary judgment, and affirming the Commissioner's decision denying her application for disability insurance benefits. Slayton contends that substantial evidence does not support the findings that work exists in significant numbers in the regional or national economy which she is capable of performing and that her testimony was not credible. She also contends that the administrative law judge ("ALJ") failed to explain the weight given to the findings and conclusions of the treating physician. The Commissioner contends that the case should be remanded to the Commissioner for the purpose of having the ALJ make specific findings of fact regarding alleged unresolved conflicts in the evidence and, if warranted, take further testimony from the vocational expert ("VE"). Because we agree with the Commissioner, the judgment of the district court is vacated and the case remanded with instructions to return it to the Commissioner for further proceedings in accordance with this opinion.

Slayton was born in March 1942. She received a G.E.D. in 1971. Prior to the onset of her disability, she assisted her electrician-husband and worked as a sewing machine operator. Slayton applied for disability insurance benefits and supplemental security income on October 10, 1993, alleging that she became unable to work because of chronic swelling in her nondominant left hand and arm following surgery for breast cancer.

Following a modified radical mastectomy, Slayton underwent implantation of a skin tissue expander by Dr. Gerald Truesdale. Truesdale saw Slayton on several occasions from May 1986 through September 1990. In August 1990, Truesdale reported that Slayton had

2

chronic lymphedema of the left arm resulting in increased swelling and decreased functional use of the left arm whenever Slayton attempted to use or increase the usage of the arm.* Truesdale recommended physical therapy for the left arm to prevent loss of all functional ability. He noted that therapy helped Slayton, but the condition was chronic. In this report, Truesdale described the condition as disabling. Truesdale saw Slayton again in 1995. In a report prepared in 1996, Truesdale reiterated his conclusion that Slayton was disabled. He also reported that Slayton was required to elevate her left arm several times during the day for lengthy periods of time in order to reduce swelling in the arm and hand.

Slayton was also under the care of a surgeon, Dr. William Bowman. In April 1989, Bowman observed that Slayton had swelling of her left arm; he noted that the swelling was not disabling and that it went down every night. Based on a May 1991 examination, Bowman stated in August 1991 that Slayton was able to work because her condition was stable. He noted, however, that she was restricted from engaging in continuous or heavy work with her left arm and hand, and she could not perform any occupation likely to injure the left hand.

In 1992, Slayton began seeking treatment from Dr. Randolph J. Gould, a surgeon. In October 1992, Gould noted that Slayton had chronic lymphedema that was unresponsive to therapies. He observed that Slayton was often unable to close her left hand and could not raise her arm above her shoulder. In June 1993, Gould noted that Slayton's left arm edema was stable. In a report prepared in October 1993 for the Virginia Department of Social Services, Gould opined that Slayton was unable to work because of "inadequate use of her left arm." He also offered that Slayton could possibly engage in employment that required only the use of her right arm. (Administrative Record at 180).

In March 1994, Dr. Ramnath Nayak, a specialist in internal medicine, performed a consultative examination of Slayton. He observed

_____

*Lymphedema is swelling as a result of obstruction of lymphatic vessels or lymph nodes and the accumulation of large amounts of lymph in the affected region. See STEDMAN'S MEDICAL DICTIONARY 1004 (26th ed. 1995).

3

that Slayton's left arm and hand were swollen to twice the normal size. He also observed that Slayton's left hand grip strength was three out of five and she could only raise her left arm 90 degrees. He further noted that her finger dexterity was good. He opined that Slayton could lift no more than ten pounds with her left hand, but could carry and handle objects without difficulty.

At the hearing before the ALJ, Slayton stated that she was unable to do more than a little housework. She also stated that she could crochet for no more than fifteen or twenty minutes due to arthritis in her fingers and increased swelling in her arm. According to Slayton, any movement caused her left hand and arm and chest to swell. She also described painful throbbing that increased with the swelling, for which she took Advil. To reduce the swelling, she would elevate her arm for about an hour from either a prone or sitting position. She stated that she needed to elevate her arm three or four times a day.

At the hearing, the ALJ asked the vocational expert to assume that Slayton was capable of light and sedentary work with the restriction that she is limited in the use of her nondominant, upper extremity to the point where she can use it only to support activities of her dominant right hand and could not use the left hand for repetitive grasping, lifting, or reaching above the shoulder level. The VE stated that Slayton could perform as a cashier, parking lot attendant, interviewer, or information clerk.

The ALJ then asked the VE to assume the same limitations with the addition that Slayton was required to lie down and elevate her left arm several times a day for up to an hour at a time. The VE stated that under that assumption, Slayton could not perform any type of substantial gainful activity. The VE also stated that under the original hypothesis, Slayton would not be precluded from performing those jobs even with mild pain that did not interfere with her ability to concentrate. Moderate or severe pain resulting in loss of concentration and problems with attendance would not make her eligible for any of the jobs identified.

The ALJ applied the sequential five step analysis found at 20 C.F.R. § 404.1520 (1998). Under this process, the ALJ concluded that Slayton: (1) was not currently engaged in substantial gainful activity;

4

(2) had a severe impairment; (3) did not have an impairment that met or equaled medical criteria warranting a finding of disability without considering vocational factors; (4) was prevented from performing her past relevant work; and (5) could perform light work with some limitations.

With regard to step five, the ALJ concluded that Slayton had the residual functional capacity to perform work at the light level of exertion in which Slayton could use her left upper extremity only to assist the right arm. The ALJ found that Slayton was precluded from work that required more than limited use of her left arm or required repetitive grasping, lifting, or reaching above should level.

The ALJ reviewed all the medical evidence and, with the exception of Truesdale's opinion regarding disability, did not explicitly reject any of it. The ALJ noted that Gould and Bowman indicated that Slayton was precluded from work that used the left arm and work that required more than very limited use of the left arm. He noted specifically that Gould opined that Slayton could perform only jobs that required just the use of her right arm. He also noted that Truesdale found chronic swelling that could only be relieved by elevation and Advil. The ALJ considered Truesdale's opinion that Slayton was disabled and found the opinion unsupported by the record.

The ALJ concluded that Slayton's testimony was not fully credible. He agreed that she experienced significant swelling in her left arm and was unable to use the arm on a sustained basis. However, he found that she could use the arm for short periods of time. He also found Slayton's testimony regarding pain was not credible because she did not take any prescription medications or receive ongoing treatment.

We review the Commissioner's final decision to determine whether it is supported by substantial evidence and whether the correct law was applied. See 42 U.S.C.A. § 405(g) (West Supp. 1998); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). We do not reweigh conflicting evidence, make credibil-

5

ity determinations, or substitute our judgment for that of the Commissioner. See Hays, 907 F.2d at 1456. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. See id.

The Commissioner contends that remand is appropriate because an unresolved conflict remains concerning whether the ALJ found that Slayton had limited use of her left arm or no use of her left arm. We agree. Because the ALJ did not explicitly indicate the weight given to all of the relevant evidence, we cannot determine if the findings are supported by substantial evidence. See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). Specifically, the ALJ did not indicate the weight given to the findings of each of the treating physicians. Generally, evidence from treating physicians should be accorded controlling weight unless it is not supported by clinical evidence and if it is inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527(d)(2) (1998). Thus, we find that remand to the Commissioner is appropriate.

In addition to determining the extent to which Slayton can use her left arm, the ALJ must make a finding regarding the assertion that Slayton needs to periodically elevate the arm. If this testimony is credited, the ALJ must also evaluate the effect of the need for elevation on Slayton's ability to work. According to the VE, if Slayton must lie down and elevate her arm, she is precluded from all work. However, the evidence is unclear as to whether Slayton must always lie down when elevating the arm. Furthermore, there is no evidence of the effect upon her ability to work if she can elevate her arm from a seated or standing position.

Because we find unresolved factual issues with regard to Slayton's residual functional capacity, we do not reach Slayton's contention that the Commissioner failed to meet his burden of proof that work exists for Slayton in significant numbers in the regional or national economy. After the ALJ resolves the factual issues regarding Slayton's residual functional capacity, further testimony from a VE may be necessary to determine whether there are jobs for Slayton.

Accordingly, the judgment of the district court is vacated and the case is remanded with instructions to return it to the Commissioner

6

for further proceedings in accordance with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>VACATED AND REMANDED</u>

7