UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ROGER D. PUCKETT,
*Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,
*Defendant-Appellee.*

No. 02-1252

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
Pamela Meade Sargent, Magistrate Judge.
(CA-01-93-1)

Argued: January 24, 2003

Decided: March 11, 2003

Before LUTTIG, MOTZ, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Deborah Kay Garton, HENSLEY, MUTH, GARTON &
HAYES, Bluefield, West Virginia, for Appellant. Robert W. Kosman,
Assistant Regional Counsel, Office of the General Counsel, SOCIAL
SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, for
Appellee. **ON BRIEF:** Frank V. Smith, III, Acting Regional Chief
Counsel, Patricia M. Smith, Deputy Chief Counsel, Office of the Gen-
eral Counsel, SOCIAL SECURITY ADMINISTRATION, Philadel-

phia, Pennsylvania; John L. Brownlee, United States Attorney, Sara B. Winn, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Claimant was denied disability insurance benefits and supplemental security income by a final judgment of the Commissioner of Social Security. He contends on appeal that the findings of the Administrative Law Judge were not supported by substantial evidence. We conclude that the ALJ's findings were supported by substantial evidence, and accordingly affirm.

I.

On July 28, 1997, claimant was admitted to Bluefield Regional Medical Center, complaining of left facial weakness and numbness of the left arm and leg. He was diagnosed with a stroke, and underwent surgery on September 4, 1997. By October 28, 1997, his neurosurgeon proclaimed that he had made an "excellent recovery" from his stroke. From this date until December of 1997, there was no evidence that claimant suffered from any disabling conditions.

On December 10, 1997, Dr. Curl diagnosed claimant with a right shoulder rotator cuff tear and left shoulder rotator cuff tendinitis, and performed surgery on the shoulders in February and April of 1998. On June of 1998, Dr. Curl could find no neurovascular deficits, and claimant reported discomfort only on "extremes of motion." On his follow-up on October 12, 1998, claimant reported that left shoulder range of motion was "significantly improved." There was some ten-

derness over the left posterior rotator cuff and range of motion was slightly restricted. There were no sensory or neurovascular deficits.

Claimant saw Dr. Troost for neurological evaluation on May 13, 1998 and related pain between the shoulder blades and right buttock pain with radiation to the right leg. On June 15, 1998, Dr. Troost opined that claimant was unable to work due to severe osteoarthritis and nerve compression in the neck and back. However, an EMG on June 30, 1998 was termed an "essentially normal study" with no clear evidence of a C5 or C6 radiculopathy in either arm.

Claimant saw multiple other doctors in the relevant time period, all of whom reported that claimant had some reduced range of motion in his back and shoulders with persistent pain, but recommended generally only physical therapy and analgesic medication for treatment. For instance, claimant reported to Dr. Alsebai on December 2, 1998, that his discomfort was related to morning stiffness and generally lasted no more than two hours. As another example, on June 11, 1999, Dr. Chand noted that claimant's range of motion of his shoulders was "almost normal," and claimant denied significant pain. Dr. Chand also noted that the MRI did not show "any major problems other than the degenerative joint disease," and recommended only physical therapy and analgesic medication.

Dr. Wile, testifying at the hearing held by the ALJ, concluded after evaluating the medical evidence that claimant had arthritis of the cervical/lumbar spine and a history of bilateral rotator cuff repair, and opined that claimant is unable to frequently lift more than 10 pounds (with occasional lifting of up to 20 pounds) or use the head or neck for "extreme movements." Dr. Wile stated that claimant had limited ability to stoop, bend, lift, or use his arms for overhead reaching.

Mr. Muskera diagnosed claimant with a chronic major depressive disorder of at least moderate severity and opined that claimant had a limited capacity to make the occupational, performance, and personal-social adjustments necessary to maintain gainful employment. But, Dr. Friedman, upon examining the evidence, testified that claimant had an adjustment disorder with mixed anxiety and depressed mood. He criticized Mr. Muskera's diagnosis, and opined that claimant could perform "routine, repetitive tasks in an environment with no

more than normal stress and not calling for much interaction with co-workers or the public."

Claimant applied for benefits on March 27, 1998, and an administrative hearing was held in front of an ALJ. Based on the facts recounted above, the ALJ concluded that claimant possessed the residual functional capacity[1] to perform routine, repetitive light work, that did not require stooping, bending, or extreme movements of the head or neck, that involved only limited overhead reaching/lifting, that could be performed independently, and that did not involve exposure to more than normal level of stress. After hearing from a vocational expert who listed numerous jobs satisfying the above requirements, the ALJ found that claimant was not "disabled" as defined in the Social Security Act[2] at any time through the date of his decision.

Claimant pursued a civil action in district court, seeking judicial review of the denial of benefits. The magistrate judge affirmed the denial of benefits, and claimant now appeals to this court.

II.

A reviewing court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and whether the correct law was applied. 42 U.S.C. §§ 405(g), 1383(c)(3); *Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays*, 907 F.2d at 1456, *quoting Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

---

[1]"Residual functional capacity" is defined as that which an individual is still able to do despite the limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2001).

[2]The relevant definition of "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

As apparent from the aforementioned facts, the ALJ's findings are clearly supported by substantial evidence.[3] Accordingly, we affirm the district court's grant of summary judgment for the Commissioner.

## *CONCLUSION*

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*

---

[3]Claimant's argument that he is entitled to a closed period of disability running from July 1997 to July 1998 is also meritless. The ALJ found that at no time was claimant "disabled" under the Social Security Act, and that finding is supported by the fact that no evidence of disability was presented for the time period of October 28, 1997 (when claimant's neurosurgeon concluded that claimant had recovered from his stroke) until December 1997 (the earliest month in which he allegedly became disabled due to his rotator cuff tear, as determined by one of claimant's physicians).