**Rosie L. GAVIGAN, Plaintiff,**

v.

**Jo Anne B. BARNHART,[1] Commissioner of Social Security, Defendant.**

**No. CIV.A.AMD–01–1016.**

United States District Court, D. Maryland.

March 1, 2003.

---

1. Jo Anne B. Barnhart, Commissioner of Social Security, is automatically substituted for Larry G. Massanari as the defendant in this case pursuant to Federal Rule of Civil Procedure 25(d)(1). No further action is required to continue this suit. 42 U.S.C. § 405(g).

Divya Bharadwaja, Stephen M Schenning, Office of the United States Attorney, Baltimore, MD, for Defendant.

Anthony R. Mignini, Mignini, Raab & Lidinsky, Baltimore, MD, for Plaintiff.

## *MEMORANDUM*

GESNER, United States Magistrate Judge.

### I. *Background*

Plaintiff, Rosie L. Gavigan, brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. § 1382. Currently pending are plaintiff's Motion for Summary Judgment, defendant's Motion for Summary Judgment, and plaintiff's Response. (Paper Nos. 7, 11, and 13). These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. No hearing is deemed necessary. Local Rule 105.6. For the reasons discussed below, the court grants plaintiff's motion, denies defendant's motion and remands for further proceedings.

On May 26, 1994, plaintiff filed an application for SSI which was denied. No request for reconsideration was filed. (R. 15). On July 17, 1996, plaintiff filed her current application for SSI alleging an inability to work beginning on July 16, 1996 due to two conditions: (1) mild degenerative arthritis of the spine; and (2) bilateral

chondromalacia[2] of the patella. (R. 59, 60). The Administration denied her application initially and on reconsideration. (R. 15). On March 17, 1998, a hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff testified and was represented by counsel. (*Id.*). A vocational expert also testified at the hearing. (R. 55–58). The ALJ concluded that plaintiff was not disabled in a decision dated May 12, 1998. (R. 23). The Appeals Council denied plaintiff's request for review, making the ALJ's decision final and reviewable. (R. 5–6).

## II. *Standard of Review*

The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966); *accord Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984). It is more than a scintilla but less than a preponderance of the evidence. *Id.* It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays,* 907 F.2d at 1456. In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Id.*

In determining whether a claimant is disabled, the Commissioner has promulgated regulations that set forth the following five-step analysis. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

(1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 *et seq.* If so, the claimant is not disabled.

(2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments. If so, the claimant is disabled.

(4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.

(5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The Commissioner bears the burden of proof at step five. *Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir.1995). If the claimant is not capable of other work, the claimant is disabled.

## III. *The ALJ's Decision*

Plaintiff's application for SSI alleges disability as a result of mild degenerative arthritis of the spine and bilateral chon-

---

**2.** Chondromalacia is a softening of the articular cartilage in the patella (kneecap). *Dor-* *land's Medical Dictionary,* 321 (28th ed. 1994)("*Dorland's* ").

dromalacia of the patella. (R. 59, 60).[3] The record before the ALJ contained treatment notes from Drs. Harms, Steele, Lichtenstein and Pezeshki. Dr. Harms, plaintiff's primary care physician, treated plaintiff between November 1995 and December 1996. (R. 99–108). Plaintiff complained to Dr. Harms of pain and swelling in her knee, and back pain. (R. 107). He subsequently referred plaintiff to Dr. Steele because of her knee pains. (R. 106).

Dr. Steele, an orthopedist, treated plaintiff from January 1996 through April 1996. (R. 114). The record contains treatment notes from three visits: (1) January 3, 1996; (2) January 22, 1996; and (3) March 27, 1996. (*Id.*). Plaintiff complained of swelling, stiffness and pain in her back, knees, and elbow. (R. 116). Dr. Steele ordered x-rays of plaintiff's back and an MRI of her knee. (R. 111–13, 116). The x-rays showed mild degenerative arthritis in the spine and the MRI ruled out a meniscal tear in plaintiff's knee. (R. 111, 116). During his examination, Dr. Steele found tenderness in plaintiff's elbow, an essentially normal examination of her back with mild discomfort and "bilateral subluxation of the patella and some patella alta." (R. 114, 116).[4]

Dr. Harms thereafter referred plaintiff to Dr. Lichtenstein, a rheumatologist. (R. 102). Dr. Lichtenstein examined plaintiff a total of three times in July and August 1996 and diagnosed fibromyalgia with multiple trigger points. (R. 123). In May 1997, Dr. Lichtenstein completed a Medical Assessment of Ability To Do Work–Related Activities (Physical) in which he concluded that as a result of lower back pain, joint pain and swelling in her legs, back and arms caused by her fibromyalgia, plaintiff had the following limitations: (1) cannot bend, lift anything, stretch or undertake excessive activity due to her fibromyalgia; (2) can never kneel or crawl; (3) can occasionally climb, stoop and crouch; (4) standing/walking should not exceed 3–4 hours in an 8–hour day or one-half hour to one hour without interruption; (5) sitting should not exceed 6–7 hours in an 8–hour day or one-half to one hour uninterrupted; and (6) plaintiff's ability to reach, handle, push, and pull were affected by joint pains and swelling from fibromyalgia. (R. 143–45).

On December 16, 1996, Dr. Pezeshki conducted a consultative orthopedic examination. (R. 138–41). His treatment notes indicate that during the examination, he observed plaintiff walking without evidence of a limp and standing without ambulatory aids. (R. 139). Dr. Pezeshki also noted that in both knees plaintiff had "tenderness on compression of the patella" and "chondromalacia of the patella." (*Id.*). He stated that there were "[n]o significant objective findings with examination of the back" and concluded that plaintiff was capable of performing activities not requiring squatting, kneeling or frequent climbing. (*Id.*).

At the hearing before the ALJ, plaintiff testified that she has trouble bending, lifting, climbing stairs, keeping her balance, and sleeping. (R. 50–51). She further testified that because of her pain she is

---

**3.** Although plaintiff's application for SSI did not list fibromyalgia as one of her disorders, the ALJ's analysis considered whether plaintiff's back disorder and fibromyalgia were disabling. The court notes that plaintiff did not object to the ALJ's recharacterization of her impairments in this manner and, therefore, the court will evaluate the ALJ's analysis with regard to plaintiff's fibromyalgia and back disorder.

**4.** Subluxation is a partial or incomplete dislocation. *Dorland's* at 1596. Patella alta is an abnormally high patella (kneecap). *Id.* at 1243.

unable to perform many basic activities without assistance, including cleaning, bathing, cooking, and shopping. (R. 52–53).

The ALJ applied the five-step sequential analysis to determine whether plaintiff was disabled by her fibromyalgia and back disorder. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 16, 1996. (R. 21). The ALJ found at steps two and three that plaintiff's back disorder and fibromyalgia were severe impairments, but that they did not meet or equal any impairment in the Listing of Impairments. (R. 21–22).

The ALJ found at step four that plaintiff had the residual functional capacity ("RFC") to "occasionally lift and carry twenty pounds, frequently lift and carry up to ten pounds, and stand and walk for six hours and sit for two hours in an 8–hour workday (with normal breaks)." (R. 22). Accordingly, the ALJ concluded plaintiff was capable of performing light work diminished by an inability to perform tasks requiring bending and kneeling, and was unable to perform her past relevant work ("PRW") as a store clerk and janitor. (*Id.*). The ALJ reached this conclusion by finding that plaintiff's statements regarding the limitations imposed by her impairments were "not entirely credible[ ] in light of the medical and other evidence of record." (*Id.*).

At step five of the sequential analysis, the ALJ considered vocational factors, such as plaintiff's age, educational background and work experience, in light of the Medical–Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 2. (R. 20). He asked the VE whether there were alternate jobs plaintiff could perform, taking into consideration the factors listed above and a RFC that included the ability to lift/carry 10 pounds frequently, 20 pounds occasionally, and occasionally climb, bend and kneel. (R. 55–56). The VE testified that plaintiff could perform the following jobs that appear in the regional and national economies: (1) cashier; (2) packer; and (3) assembler. (R. 57). Accordingly, the ALJ determined that plaintiff was able to adjust to alternative work that exists in significant numbers in the national economy, and was not disabled. (R. 21).

## IV. *Discussion*

The issue before the court is whether there is substantial evidence in the record to support the ALJ's determination that plaintiff is not disabled. The ALJ's finding at step five of the sequential analysis, that plaintiff has the RFC to adjust to alternative work that exists in significant numbers in the national economy, is based primarily on his determination that plaintiff's subjective complaints of pain were not entirely credible. Because the ALJ's credibility determination does not reflect that he properly applied the required two-step analysis, the court remands this case for further proceedings.

 The ALJ must apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir.1996); 20 C.F.R. § 416.929. The threshold requirement is that there must be "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant" ("Step One"). *Craig*, 76 F.3d at 594.[5] Once the ALJ

---

**5.** The relevant regulation states the Step One analysis as follows: "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic

concludes that a claimant has a medical impairment that can reasonably be expected to produce the pain claimed, the ALJ must then evaluate the intensity and persistence of that pain and the extent to which it limits claimant's ability to work ("Step Two"). *Id.* at 595; 20 C.F.R. § 416.929(c). Factors to be considered at Step Two include: (1) claimant's statements about pain; (2) claimant's medical history; (3) laboratory findings; (4) any objective medical evidence of pain; (5) claimant's daily activities; and (6) medical treatment to alleviate pain. *Craig,* 76 F.3d at 595; 20 C.F.R. § 416.929(c). A claimant is not required to show objective medical evidence of the pain itself. *Foster v. Heckler,* 780 F.2d 1125, 1129 (4th Cir. 1986); 20 C.F.R. § 416.929(c)(2).

In this case, the ALJ began his credibility discussion by listing several Step Two factors and stating that he must "carefully consider [the factors] in evaluating subjective complaints of pain." (R. 19).[6] He then stated that the limitations claimed by plaintiff were "far in excess of those which reasonably would be expected from the objective clinical findings and are not consistent with all of the other evidence of record." (*Id.*). As support for this proposition, the ALJ cited: (1) x-rays of plaintiff's back showing mild degenerative arthritis; (2) an MRI performed in April 1996 showing no tear in plaintiff's knee; (3) Dr. Pezeshki's medical notes from his consultative examination stating that "he saw no significant objective findings with

examination of the back"; and (4) Dr. Pezeshki's conclusion that plaintiff was capable of performing activities not requiring squatting, kneeling or frequent climbing. (*Id.*). The ALJ concluded his brief credibility analysis by stating that "[n]either the objective medical evidence nor the testimony of the claimant establishes psychological or physiological abnormalities which would preclude all types of work activity." (*Id.*). For the reasons discussed below, the court concludes that the ALJ's credibility analysis does not comport with the required two-step process in that the ALJ did not address Step One at all and did not adequately address Step Two of the analysis.

A. *Step One of the ALJ's Credibility Analysis*

When assessing credibility of subjective complaints of pain, the ALJ must first determine at Step One whether or not there is objective medical evidence of a medical condition that could reasonably be expected to cause plaintiff's pain. *Craig,* 76 F.3d at 594; 20 C.F.R. § 416.929(b). In this case, plaintiff suffers from two impairments, fibromyalgia and a back disorder, and yet the ALJ's credibility determination does not contain any Step One analysis with regard to either impairment. Instead, the ALJ omitted Step One entirely and limited his credibility analysis to assessing the severity of plaintiff's pain at Step Two.[7]

techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R § 416.929(b).

6. The ALJ listed the Step Two factors from 20 C.F.R. § 416.929(c)(3) including, *inter alia,* plaintiff's daily activities, the location, duration, frequency, and intensity of any pain,

precipitating and aggravating factors, and medication or other treatment to alleviate the pain. (R. 18–19).

7. The fact that the ALJ performed a Step Two analysis would seem to suggest that he first reached a conclusion with regard to Step One. Because the ALJ found that plaintiff has two impairments and the ALJ's analysis does not distinguish between them, the court is left to speculate as to the ALJ's conclusion re-

■ Under these circumstances, remand is appropriate because the ALJ did not perform the required analysis at Step One. *Craig,* 76 F.3d at 596. In *Craig,* the Fourth Circuit remanded a decision where the ALJ did not expressly consider Step One and instead limited his analysis to Step Two. *Id.* The court did not review the ALJ's Step Two analysis, but instead remanded to the ALJ to determine whether there was medical evidence that claimant had an impairment that could reasonably be expected to cause her pain. *Id.*[8] Likewise, this court concludes that remand is appropriate so that the ALJ can make explicit findings at Step One with regard to each of plaintiff's impairments, and specifically address plaintiff's fibromyalgia.

The court concludes that the need for a clear, cogent Step One analysis is height-ened because plaintiff suffers from fibromyalgia, a disease that poses particular challenges to credibility analyses due to the limited available objective medical evidence.[9] The Seventh Circuit has described fibromyalgia in the context of disability law:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptoms that discriminates between it and other diseases of a rheumatic character—multiple tenders spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have

-garding Step One. For example, the ALJ could have determined that plaintiff's back disorder, but not her fibromyalgia, could reasonably be expected to cause her pain or vice versa. He also could have found that both impairments could cause the pain. In any event, the court believes that remand is necessary because the court cannot speculate as to the ALJ's reasoning. *See Cook v. Heckler,* 783 F.2d 1168, 1174 (4th Cir.1986)(remanding, in part, for failure to explain findings adequately); *Hammond v. Heckler,* 765 F.2d 424, 426 (4th Cir.1985)(explaining that the "duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain").

8. The court in *Craig* cautioned that only if the ALJ finds that Step One is satisfied, should the ALJ assess the credibility of plaintiff's subjective complaints of pain at Step Two. *Craig,* 76 F.3d at 596. In other words, once plaintiff's alleged pain could reasonably be caused by her impairment, then the issue becomes one of assessing the *actual* intensity, persistence, or functionally limiting effects of plaintiff's alleged pain. *See id.* at 594. According to SSR 96–7p ("Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements"): "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce pain of other symptoms has been established, adjudicators must recognize that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments and the same medical signs and laboratory findings."

9. As an attachment to her brief, plaintiff submitted SSR 99–2p ("Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (CFS)") arguing that fibromyalgia and CFS must be similarly evaluated. (Paper No. 7 at 16–17). Although SSR 99–2p mentions fibromyalgia in the sense that it acknowledges some overlapping symptoms, the two diseases are not the same; SSR 99–2p, therefore, is not binding as to the evaluation of fibromyalgia. It should also be noted that the government seems to challenge the fibromyalgia diagnosis and/or whether fibromyalgia is a medically determinable impairment. The court need not address this issue inasmuch as the ALJ specifically found at step two of the five-step sequential analysis that plaintiff's fibromyalgia was an impairment which "cause[d] significant vocationally-related limitations" and, therefore, was a severe impairment. (R. 16).

at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir.1996). In *Sarchet,* the Seventh Circuit remanded the case, in part, because the ALJ misunderstood fibromyalgia. *Id.* at 307. Here, the ALJ's decision does not necessarily reflect that he misunderstood fibromyalgia, but that he never considered it. Once the ALJ found plaintiff's fibromyalgia was severe at step two of the sequential analysis, he did not distinguish thereafter between plaintiff's two impairments. Indeed, the ALJ did not explicitly mention fibromyalgia in his credibility analysis at all.

■ In fact, the ALJ summarily rejected the only medical evidence in the record that specifically related to the issue of fibromyalgia, Dr. Lichtenstein's treatment notes and his 1997 report. (R. 120, 127–28, 143–45).[10] In so doing, the ALJ merely rejected Dr. Lichtenstein's opinion as "not supported by the objective medical evidence and as inconsistent with other substantial evidence in the case record." (R. 19). The ALJ made this determination without distinguishing between plaintiff's two impairments or even mentioning fibromyalgia, including specifying how the evidence is inconsistent with fibromyalgia-related pain.

On remand, the ALJ should assess the available medical evidence and determine whether plaintiff's fibromyalgia could reasonably be expected to cause her pain. In doing so, the ALJ should discuss the symptoms associated with fibromyalgia (particularly pain) and explain what pain could reasonably be expected from the disease. With this foundation, the ALJ should then thoroughly explain whether or not plaintiff's pain falls within these parameters.

**B.** *Step Two of the ALJ's Credibility Analysis*

At each of the two stages of the analysis, an ALJ has the duty to explain the weight he assigns the relevant evidence and to provide the reasons supporting his decision. *Hammond v. Heckler,* 765 F.2d 424, 426 (4th Cir.1985); *Gordon v. Schweiker,* 725 F.2d 231, 235–36 (4th Cir.1984). Here, in addition to failing to address Step One of the pain analysis, the ALJ did not consider all the required factors or adequately explain his conclusions at Step Two of the analysis.

First, although the ALJ listed the factors he was required to examine at Step Two, his analysis mentioned only certain objective medical evidence and does not reflect that he actually took all the required factors into consideration. Under

---

**10.** Dr. Lichtenstein was plaintiff's treating rheumatologist in July and August of 1996. He diagnosed her with fibroymalgia and, as outlined above, in 1997 submitted a report indicating extensive limitations on her activities resulting from her impairments. (R. 128, 143–45).

The ALJ rejected Dr. Lichtenstein's opinion on the grounds that it was inconsistent with the MRI of plaintiff's knee, x-rays of her back, and with Dr. Pezeshki's opinion. The ALJ, however, did not adequately explain his reasons for rejecting Dr. Lichtenstein inasmuch as he failed to recognize that unlike Dr. Pezeshki, Dr. Lichtenstein was a treating physi-

cian, 20 C.F.R. § 416.927(d)(2), and as a rheumatologist was better qualified to diagnose and evaluate fibromyalgia than was Dr. Pezeshki, an orthopedist, 20 C.F.R. § 416.927(d)(2)(ii)(5)("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Moreover, as discussed in Part B, the medical evidence that the ALJ claims is inconsistent with Dr. Lichtenstein's opinion (and with plaintiff's subjective complaints) is not pertinent to evaluating fibromyalgia-related symptoms.

the regulations, a Step Two analysis should take into account "all of the available evidence" relevant to the severity of plaintiff's impairment including, *inter alia*, medical history, objective medical evidence of pain, plaintiff's daily activities, aggravating factors, and any treatment or medication taken to relieve pain. 20 C.F.R. § 416.929(c)(1)-(3). In this case, the ALJ's analysis only included mention of certain medical evidence: (1) Dr. Pezeshki's examination of plaintiff's back; (2) the MRI of plaintiff's knee; and (3) x-rays of plaintiff's back. (R. 19). There was no mention of other factors, such as daily activities, aggravating factors, or medicine and treatment for pain.[11] Moreover, by basing his Step Two analysis solely on the objective medical evidence in this manner, the ALJ may have improperly required plaintiff to show objective medical evidence of the pain itself.[12] On remand, the ALJ should take care to distinguish between the requirement of objective medical evidence of the underlying impairment that causes the pain versus objective medical evidence of pain itself.

Second, the ALJ concluded, without analysis, that plaintiff's subjective complaints of pain were inconsistent with, and unsubstantiated by, the medical evidence. At no point in his credibility analysis did the ALJ distinguish between plaintiff's two impairments. Rather, the ALJ's opinion merely reflects the blanket statement that the medical evidence was inconsistent. Furthermore, the ALJ did not explain in

any way how the evidence to which he refers is actually inconsistent with plaintiff's pain, as it pertains to each of plaintiff's two impairments.

■ The ALJ's failure to explain his decision adequately or distinguish between the two impairments precludes this court's review of the decision. For example, by pointing to the x-rays and MRI as inconsistent with plaintiff's pain, the ALJ implies that if plaintiff suffered from severe fibromyalgia-related pain, then there would be evidence to that effect in these tests. It is not necessarily true that the tests would reveal plaintiff suffered from fibromyalgia-related pain. Indeed, medical authorities recognize that "[n]o radiographic findings of fibromyalgia have been established, and laboratory tests are characteristically normal." (Paper No. 11 n. 12 (quoting Stuart L. Weinstein and Joseph A. Buckwalter, *Turek's Orthopaedics, Principles and Their Application*, p. 205–08 (5th ed.1994))). Therefore, unremarkable MRI and x-ray results do not support the ALJ's conclusion that plaintiff's alleged pain is inconsistent with the objective medical evidence. In sum, because the ALJ did not adequately explain his Step Two analysis as it related to each of plaintiff's two impairments, the court is unable to conclude that substantial evidence supports the ALJ's conclusion.

## V. Conclusion

As detailed above, on remand, the ALJ should apply the appropriate two-part test

11. In the case of fibromyalgia, where symptoms are subjective and there are no laboratory or radiographic tests, it would seem particularly inappropriate to limit a Step Two analysis to consideration of certain objective medical evidence and neglect other factors, such as pain medication, daily activities, and aggravating factors.

12. *See Craig,* 76 F.3d at 594–95 ("[B]ecause pain is subjective and cannot always be confirmed by objective indicia, claims of disabl-

ing pain may not be rejected 'solely because the available objective evidence does not substantiate [the claimant's] statements' as to the severity and persistence of her pain."); 20 C.F.R. § 416.929(c)(2)("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms ... solely because the available objective medical evidence does not substantiate your statements.").

for assessing the credibility of plaintiff's subjective complaints of pain. The ALJ should determine first whether either of plaintiff's impairments, separately or in combination, could reasonably be expected to cause her pain, clearly identifying his analysis as to each of the two impairments. If so, the ALJ should analyze the credibility of plaintiff's subjective complaints of pain, applying all of the factors listed in 20 C.F.R. § 416.929(c)(1)-(3), while recognizing that objective evidence of pain is not required.

For the foregoing reasons, the court grants plaintiff's Motion for Summary Judgment (Paper No. 7), denies defendant's Motion for Summary Judgment (Paper No. 11), and remands this case for further proceedings consistent with this Memorandum. A separate order shall issue.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 1st day of March, 2002 HEREBY ORDERED that:

1. Plaintiff's Motion for Summary Judgment (Paper No. 7) is GRANTED.

2. Defendant's Motion for Summary Judgment (Paper No. 11) is DENIED.

3. The decision of the Commissioner denying plaintiff benefits is reversed, and the case is remanded for further proceedings consistent with the accompanying Memorandum.

4. The Clerk shall mail copies of this Order and the accompanying Memorandum to plaintiff and to counsel of record.